**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **RICHARD STARNES, MELANIE ALLEY,** and **ANGEL SKINNER,** individually and on behalf of all others similarly situated, | : : : | Civil Action No.: 2:23-cv-00484-MAK |
| | : | |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **AMAZON.COM, INC.** and **AMAZON LOGISTICS, INC.,** | : : | |
| | : | |
| Defendants. | : | |

**SUPPLEMENTAL SUBMISSION IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR APPROVAL OF
<u>FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT</u>**

## I.   INTRODUCTION

Pursuant to the Court's Order of March 29, 2023 ("Order"), Plaintiffs provide the instant supplement to address the Court's Order and footnotes therein. Specifically, Plaintiffs address below the Court's footnotes to provide additional legal and factual support regarding the payments to the Named Plaintiffs as well as Plaintiffs' Counsel's request for attorneys' fees and costs. Plaintiffs also contemporaneously submit the supplemental Declarations of Sarah Schalman-Bergen, Michaela Wallin, and Ryan Hancock, and the Declarations of Named Plaintiffs Richard Starnes, Melanie Alley, and Angel Skinner, to provide additional factual information concerning the payments and Plaintiffs' Counsel's lodestar, as requested by the Court's Order.

As set forth in Plaintiffs' Unopposed Motion for Approval of FLSA Settlement, as further supported by the instant supplement, the Court should grant Plaintiffs' Motion.

## II.   The Court Should Find that the Payments to the Named Plaintiffs Do Not Affect the Fair and Reasonable Resolution of the Action

In its Order, the Court provided Plaintiffs leave to file a supplemental submission demonstrating "proof of the efforts provided by Plaintiffs warranting a lead plaintiff award," noting that the Court was without "evidence allowing a lead plaintiff award." ECF No. 11. In footnote 2 of the Court's Order, the Court discussed the Second Circuit's recent decision in *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704(2d Cir. 2023) (citing *Trustees v. Greenough*, 105 U.S. 527, 537 (1881)), noting that the Second Circuit had "questioned the validity of service awards under Supreme Court precedent," and referencing a recent decision from the Eleventh Circuit that prohibited service awards, *Johnson v. NPAS Solutions, LLC,* 975 F3.d 1244 (11th Cir. 2023) ("NPAS"). ECF No. 11. Plaintiffs submit the instant supplement, as well as the accompanying declarations to address the Court's Order and footnote.

*First*, as stated in Plaintiffs' Unopposed Motion, the proposed additional payments to Plaintiffs are being made in exchange for a general release of claims to the Named Plaintiffs, which

is broader than the wage claim release being provided by the other collective members. Mem. at 13; Settlement Agreement, ECF No. 10-3, (Compare ¶12 to ¶13). The payments are supported by valuable consideration that could not otherwise be obtained in the context of an FLSA settlement. Courts routinely find that additional payments are necessary in order to effectuate the broader release of claims being provided here. And as stated in Plaintiffs' Memorandum, ECF No. 10-1, the payments do not otherwise impact the fair and reasonable resolution of a *bona fide* dispute – the only question before the Court in evaluating the FLSA collective action settlement here. Therefore, regardless of the out-of-Circuit decision in *NPAS*[1] (which did not concern this specific issue and did not arise in the context of an FLSA settlement), the payments are proper as the consideration supporting the general release of claims being provided and sought by Defendants, and the general release provision of the agreement should not be voided by the Court.

 *Second*, even were the Court to consider the general release payments through a pure service award framework, the Court should find that the payments are appropriate in this case. As an initial matter, four appellate courts have subsequently rejected the reasoning in *NPAS*, including the First, Second (notwithstanding one Second Circuit panel's commentary in *Fikes*), Sixth, and Ninth Circuits.[2] And precedent from the Third Circuit and within the district courts in this Circuit

---

[1] The Supreme Court of the United States denied the petition for *certiorari* in *NPAS* on April 17, 2023, *Johnson v. Dickenson*, No. 22-389 (S.Ct. Apr. 17, 2023), and will not be weighing in on *NPAS* or otherwise rendering a decision to alter longstanding Third Circuit law on these issues.

[2] *See Hyland v. Navient Corp.*, 48 F.4th 110 (2d Cir. 2022), *cert. denied sub nom. Yeatman v. Hyland*, No. 22-566, 2023 WL 2959374 (U.S. Apr. 17, 2023), and *cert. denied sub nom. Carson v. Hyland*, No. 22-634, 2023 WL 2959375 (U.S. Apr. 17, 2023) (describing NPAS as "something of an outlier among the circuits and is a significant change from long-standing practice"); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769 (9th Cir. Sept. 28, 2022) (explicitly rejecting *NPAS* and its reasoning); *Murray v. Grocery Delivery E-Services USA Inc.*, 55 F.4th 340 (1st Cir. Dec. 16, 2022) (rejecting reliance on *Greenough* and *Pettus*, holding "we choose to follow the collective wisdom of courts over the past several decades that have permitted these sorts of incentive payments, rather than create a categorical rule that refuses to consider the facts of each case"); *see also, e.g., Shane Grp. Inc v. Blue Cross Blue Shield of Michigan*, 833 F. App'x 430,

supports granting service awards to class representative plaintiffs. Here, in addition to providing a general release of claims to Defendants in exchange for negotiated and agreed upon consideration, the Named Plaintiffs stepped up to challenge the pay practices of two Delivery Service Providers that contracted with a very large corporation (Amazon), at risk to their own reputations, among other risks discussed herein. They participated in the extensive ADR process, including providing valuable information about their work experiences to Plaintiffs' Counsel, which enabled Plaintiffs' Counsel to negotiate an excellent settlement to benefit the other collective members. *See generally* Declarations of Richard Starnes, Melanie Alley, and Angel Skinner. Accordingly, the Court should approve the proposed settlement agreement as a fair and reasonable resolution of a *bona fide* dispute and find that the additional payments to the Named Plaintiffs do not otherwise impact the FLSA collective action settlement.

### A. The General Releases Provide Bargained for Relief that Could Not Otherwise Be Obtained In This Jurisdiction In An FLSA Collective Action Settlement

As noted, the payments at issue differ from pure service awards, as they constitute consideration for a general release of claims beyond what is available in the context of an FLSA settlement. As a result, the payments here are materially different from those at issue in the *NPAS* matter. And as explained herein, the payments do not affect the fairness of the settlement and should not be voided.

Here, in addition to seeking a settlement of Plaintiffs' FLSA claims on a collective action basis, Defendants sought to obtain a general release from the Named Plaintiffs. As with any litigation involving employees suing an actual or alleged employer, Defendants desired a complete

---

431 (6th Cir. 2021) (rejecting argument that service award amounted to a "bounty"). Though not an issue before this Court, Plaintiffs submit that *NPAS* was wrongly decided. *See, e.g., Johnson v. NPAS Sols., LLC*, 43 F.4th 1138, 1139-53 (11th Cir. 2022) (Pryor, J., dissenting) (describing the panel majority decision as "wrong" and panel's misapplication of Supreme Court precedent).

resolution of all claims that the Named Plaintiffs might have against them. The proposed payment to each Named Plaintiff thus differs from a typical "service award," as the contemplated payment constitutes consideration for a bargained-for general release that would otherwise be unavailable to Defendants in the context of this settlement. *See* Supp. Schalman-Bergen Decl. at ¶¶ 65-71.

Indeed, the relief Defendants sought was not obtainable through the vehicle of an FLSA collective action settlement because of the unique features and policy considerations underlying the FLSA (unlike other federal statutes, such as the Sherman Act at issue in *Fikes*, or the Telephone Consumer Protection Act at issue in *NPAS*). Specifically, courts in this district generally do not permit individuals to provide a general release for the same consideration that they receive for settling their FLSA claims. *See Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 659–60 (E.D. Pa. 2020) (noting that a general release in FLSA actions "allows the employer to extract for the plaintiff a benefit beyond what he is compensated for in exchange for payment of the fair wages he is owed."). Courts in this District instead have conditioned approval of general releases in FLSA actions on the provision of additional consideration.[3]

Accordingly, and in order to provide Defendants with the scope of the release that they sought, the Parties agreed that the Named Plaintiffs would receive consideration in addition to what they would receive as part of the FLSA collective action settlement in exchange for their general release. The general releases are valuable to Defendants as they transfer to the Named Plaintiffs the risk of extinguishing any unknown claims and enable Defendants to buy complete

---

[3] *See Munoz v. Goldberg, Miller & Rubin, P.C.*, No. 21-cv-297, 2021 WL 4902334, at *3 (E.D. Pa. Oct. 21, 2021) (approving broad release "supported by consideration beyond any amount due for their alleged unpaid hours"); *Redden v. King's Corner Pub, LLC*, No. 16-cv-6152, 2017 WL 4883177, at *3 (E.D. Pa. Oct. 27, 2017) (approving FLSA settlement with general release because the release was "supported by significant additional consideration beyond the full compensation provided for Plaintiff's FLSA claims" and collecting cases in support).

peace. In addition, the general release extends past each individual's last date of work with the relevant DSP, to the date when each individual signed the Settlement Agreement. Settlement Agreement, ECF No. 10-3, (Compare ¶12 to ¶13). Moreover, each of the Named Plaintiffs is also a consumer of products purchased on Amazon.com's website, such that their general release encompasses any claims arising out of these purchases, which will be forever waived by Plaintiffs pursuant to this release. *See* Starnes Decl. at ¶ 19; Skinner Decl. at ¶ 21; Alley Decl. at ¶ 23. The Plaintiffs would not have agreed to give up these rights without this agreement supported by separate and material consideration. *See* Starnes Decl. at ¶ 20; Skinner Decl. at ¶ 22; Alley Decl. at ¶ 24. Private parties are free to enter settlements to avoid further risk of litigation from a plaintiff who has shown a willingness to file suit (and here, Named Plaintiffs are further giving up their rights to participate as class members in any litigation covering the time period of their release[4]).

Parties are and should be free to enter into such general release agreements and the Court's oversight is properly limited only to whether the provisions otherwise impact the fairness of the FLSA settlement to the collective. Indeed, but for the existence of the FLSA collective action settlement, the Court would have no judicial authority to weigh in on a private agreement that concerns non-FLSA claims.[5] And here, the standard for approval of an FLSA collective action in

---

[4] Amazon regularly confronts claims for alleged violations of labor, employment, anti-trust, product liability, and consumer protection laws, among others. *See, e.g., Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431 (2020) (products liability claim), *Pecznick v. Amazon.com, Inc*., No. 2:22-cv-00743, 2022 WL 4483123, at *1 (W.D. Wash. Sept. 27, 2022) (purported class action alleging violations of state consumer protection law and related claims), *Hoyt v. Amazon.com, Inc.*, No. 19-cv-218, 2019 WL 1411222, at *1 (N.D. Cal. Mar. 28, 2019) (worker misclassification and related claims), and *Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301 (W.D. Wash. 2021) (purported class action alleging violations of Illinois's Biometric Information Privacy Act).

[5] As a general matter, Parties are free to enter contracts without court interference. *Dillsburg Ventures, LLC v. Carroll Twp., York Cnty.*, No. 1:10-cv-00275, 2010 WL 6230223, at *5 (M.D. Pa. Nov. 22, 2010), *R&R adopted in part, rejected in part on other grounds*, 2011 WL 1044149 (M.D. Pa. Mar. 18, 2011) ("Parties may generally contract as they wish, a freedom that may be limited by any legislation that imposes restrictions or by public policies that 'clearly outweigh[ ]'

the Third Circuit simply requires that the compromise reached is a "fair and reasonable" resolution of a *bona fide* dispute and furthers the purpose of the FLSA. *See Brumley v. Camin Cargo Control, Inc.*, No. 08-cv-1798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)). If the settlement is deemed to be fair – *i.e.* it does not reflect unfair terms that are inherent in the inequalities in bargaining power between employers and employees – the Court's role[6] is complete and the settlement should be approved. Here, given that the payments reflect less than 1.5 percent of the fund, *after* accounting for proposed attorneys' fees and costs, *see infra*, they do not materially impact the relief offered to the Settlement Collective Members to release their claims when they cash their settlement awards.

And while the Court's Order noted the Eleventh Circuit's decision in *NPAS* (as well as the Second Circuit's decision in *Fikes*, citing *NPAS*), the nature of the general release payments in the context of the FLSA settlement in this case renders the payments in this case wholly distinct from the payments at issue in *NPAS*, which were pure "incentive payment[s]" for which no additional consideration was provided (*ie* there, the named plaintiff did not provide an additional release and the scope of the release given by the class plaintiff and the class members was identical). *See*

---

the interest in enforcement of particular contractual terms.") (quoting *Cent. Dauphin Sch. Dist. v. Am. Cas. Co.,* 493 Pa. 254, 426 A.2d 94, 96 (Pa.1981); Restatement (Second) of Contracts Intro. Note 46 (Tentative Draft No. 12, Mar. 1, 1977)).

[6] One court in this District recently issued an opinion questioning (in the context of an individual FLSA settlement) whether the FLSA requires court approval of a settlement at all. *See Alcantara v. Duran Landscping, Inc.*, No. 2:21-cv-03947-JDW, 2022 WL 2703610, at *4 (E.D. Pa. Jul. 12, 2022) (Wolson, J.) (examining *Lynn's Food* and holding that "[i]t's not clear that *Lynn's Food* stands for the broad proposition that this Court and others have given it."). And Judge Wolson began his opinion questioning (in the context of an individual FLSA settlement) whether the FLSA requires court approval of a settlement at all with the following statement: "Ronald Reagan described the nine most terrifying words in the English language: 'I'm from the Government, and I'm here to help.' [] As federal judges, we are not immune from the possibility that our "help" will make things worse, not better, for the parties before us." *Alcantara*, 2022 WL 2703610, at *1 (citation omitted).

Settlement Agreement, *Johnson v. NPAS Solutions, LLC,* No. 9:17-cv-80393 (S.D. Fla.), ECF No. 37-1. Additionally, *NPAS* arose in the context of a Rule 23 settlement that binds all absent class members unless they opt out, *see id.*; by contrast, under the FLSA settlement here, collective members release their claims only by depositing their check and are otherwise not bound by the settlement, *see* Agreement, ECF No. 10-3. As the Third Circuit has made clear, the settlement collective members are not subject to the same due process concerns as class members in a Rule 23 action.[7] Neither the *NPAS* decision nor the Second Circuit's speculation about the Supreme Court's treatment of *NPAS* (which the Supreme Court has now declined to consider) implicate the proposed arrangement here. At bottom, the general release payments do not affect the fairness of the settlement and should not be voided.

### B.     The Payments are in Line With Third Circuit Precedent Approving Enhanced Payments to Named Plaintiffs

In addition to providing the bargained-for general releases described above, the payments are appropriate for the additional reason that providing additional payments to a named plaintiff in recognition of the risks and efforts undertaken as a named plaintiff is consistent with Third Circuit precedent and such payments are routinely granted throughout the Third Circuit. Indeed, even were the Court to view the general release payments through the framework of a service award, the Court should find that the payments are warranted in this case.

The effective enforcement of several important remedial laws, including the Fair Labor Standards Act, relies on private individuals stepping forward to vindicate a class's rights. Class representatives are "essential ingredient[s] in any class action." *Cook v. Niedert*, 142 F.3d 1004,

---

[7] *See Symczyk v Genesis HealthCare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (2013) (noting that "[a]bsent from the text of the FLSA is the concept of 'class certification'"; thus, use of "the vernacular of the Rule 23 class action" is inapposite to FLSA collective actions and "may have injected a measure of confusion" into FLSA jurisprudence).

1016 (7th Cir. 1998). They "confer[] benefits on all other class members"—most of whom are strangers to them—without any guarantee of compensation. *See In re Linerboard Antitrust Litig.*, No. 1261, 2004 WL 1221350 at *18 (E.D. Pa. June 2, 2004). Recognizing the unique role that representative plaintiffs play in private litigation, courts regularly grant payments over and above pro rata distributions from the settlement fund to parties stepping forward on behalf of the class.

Critically, the Third Circuit has explained that courts routinely permit enhanced payments to named plaintiffs in the context of "class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333, n.65 (3d Cir. 2011). Such payments are appropriate, as they serve the "[t]he purpose of . . . compensate[ing] named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and [they serve] to reward the public service of contributing to the enforcement of mandatory laws." *Id.* at 333, n.65 (citations omitted). And Courts in this Circuit have correctly followed both *Sullivan* and the widely accepted practice in approving additional payments to named plaintiffs. *See*, *e.g.*, *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, No. CV 17-341, 2022 WL 16533571, at *12 (E.D. Pa. Oct. 28, 2022) (explaining that courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation" (citation omitted)).[8]

---

[8] Indeed, the Third Circuit has expressly affirmed district courts' grant of service awards, *see, e.g., Brady v. Air Line Pilots Ass'n*, 627 F. App'x 142, 144 (3d Cir. 2015) (affirming court's approval of incentive award); *Sullivan*, 667 F.3d 273, 333, n.65. Additionally, in several cases, the Third Circuit has acknowledged a district court's approval of service awards to named plaintiffs without casting doubt on the propriety of those payments. *See, e.g., Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 498 (3d Cir. 2017) (Third Circuit acknowledged District Court's approval of incentive award, did not analyze incentive award as it was not raised in appeal, and further did not raise any concerns with the propriety of the incentive award); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 882 (3d Cir. 2016) (same).

And while the Court noted in footnote 2 of its Order that certain out-of-circuit courts have "questioned the validity of service awards," *see* ECF No. 11, these cases are not applicable to the general release payments in this FLSA matter as described above, and, moreover, these cases stand in direct contrast to Third Circuit precedent approving service awards. *See, e.g., Wood v. Saroj & Manju Invs. Philadelphia LLC*, No. 19-CV-2820, 2020 WL 7711409, at *5 n.8 (E.D. Pa. Dec. 28, 2020) (approving service award, rejecting out-of-circuit case law that "looked skeptically" at service awards and declining to "deviate" from substantial precedent within the Third Circuit). Notably, multiple Courts in this Circuit have explicitly declined to follow these out-of-circuit decisions, providing that "[t]here is substantial precedent from this Circuit supporting approval of incentive payments. . . . . [u]ntil and unless the Supreme Court or Third Circuit bars incentive awards or payments to class plaintiffs, they will be approved by this Court if appropriate under the circumstances." *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 353–54 (D.N.J. 2020) (citations and quotations omitted); *Wood*, 2020 WL 7711409, at *5 n.8 ("[t]here is substantial precedent from this Circuit supporting approval of incentive payments . . . We will not deviate from that precedent here.") (citations and quotations omitted); *Johnson v. Free State Mgmt. Grp., LLC*, No. 20-cv-197, 2021 WL 2711528, at *7 (E.D. Pa. July 1, 2021) (same). Precedent from this Circuit supports approval of enhanced payments in this case. *See, e.g., Fikes,* 62 F.4th at 721 (ultimately declining to follow *NPAS* and allowing service awards because decisions out of the Second Circuit were "precedents [the Circuit] must follow").

Here, the Named Plaintiffs took substantial risks on behalf of the collective and devoted significant time and effort to the prosecution of their claims, such that "there would be no benefit to the Settlement Class Members if Plaintiffs had not stepped forward and prosecuted this matter to the current resolution." *High St. Rehab., LLC v. Am. Specialty Health Inc.*, No. 2:12-cv-07243-

NIQA, 2019 WL 4140784, at *15 (E.D. Pa. Aug. 29, 2019); *See* Supp. Schalman-Bergen Decl. ¶¶ 52-64; Starnes Decl. at ¶¶ 6-17, 22-25; Skinner Decl. at ¶¶ 7- 19, 23-25; Alley Decl. at ¶¶ 7-21, 25-29. Consistent with Third Circuit precedent, even viewing the payments through a service award framework, the payments should be approved in this case.[9]

> ***First***, there is inherent risk for an employee bringing claims against his current or former employer. *See Bellan v. Cap. Blue Cross*, No. 1:20-CV-00744, 2022 WL 736441, at *4 (M.D. Pa. Mar. 10, 2022) (acknowledging the "risk entailed in participation in a lawsuit against one's employer or former employer under the FLSA"). This is true both when the plaintiff is a current employee, as they may face immediate employment consequences, and when the plaintiff sues a former employer, as doing so may affect their work in the industry going forward. *See Creed v. Benco Dental Supply Co.*, No. 3:12-cv-01571, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) (awarding $15,000 incentive award based on risk alone where a plaintiff  sued a major player in an "industry is dominated by only a few companies, so there would exist the potential for [plaintiff] to be excluded from employment across the entire industry"); *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-1248 MF, 2011 WL 1344745, at *22–23 (D.N.J. Apr. 8, 2011) ("By bringing suit against a major company in the travel business, they risk their good will and job security in the industry for the benefit of the class as a whole.").

---

[9] "[T]here are no set factors that a District Court must employ in determining the amount of class representative incentive awards." *Brady v. Air Line Pilots Ass'n*, 627 F. App'x 142, 146 (3d Cir. 2015)*; see also In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 WL 16533571, at *12 (E.D. Pa. Oct. 28, 2022) ("a district court need not employ factors to determine the amount of class representative awards"). That said, some courts have noted that the following factors are relevant to this inquiry:  "the risk to the plaintiff in commencing litigation, both financially and otherwise"; "the notoriety and/or personal difficulties encountered by the representative plaintiff"; "the extent of the plaintiff's personal involvement in the lawsuit"; "the duration of the litigation"; and "the plaintiff's personal benefit (or lack thereof) purely in her capacity as a member of the class." *Hall v. Accolade, Inc.*, No. 17-cv-3423, 2020 WL 1477688, at *10 (E.D. Pa. Mar. 25, 2020).

For example, plaintiffs agreed to put their name on a public docket, potentially impacting their employability, and each was prepared to take the steps necessary to bring this litigation to a successful conclusion.[10] And, in suing Amazon, the Named Plaintiffs went up against not only the company that they alleged served as their employer when delivering Amazon packages, but a company that engages with delivery service providers throughout the United States. By bringing litigation against such a large user of package delivery services, Named Plaintiffs have risked exclusion from employment or other consequences in the industry, among other risks.

These considerations are real:  Plaintiffs' counsel has represented delivery associates who have been retaliated against by the delivery service provider for whom they worked; who have believed that they have been denied future employment because of their willingness to bring a claim; and who have been sued in federal court for defamation and business disparagement by the delivery service provider who paid them.[11]  *See* Supp. Schalman-Bergen Decl. ¶¶ 63-64. The fact

---

[10] Each has described some of the risks that they faced in declaration. *See, e.g.,* Starnes Decl. at ¶¶ 22-25 ("When I decided to go forward with this case on behalf of other workers, I knew I was taking on risk to my reputation for complaining about my workplace. I understand that my name is publicly available and associated with this case. I thought that participating in this case might make it hard for me to find another job in the future, but I wanted to go through with the lawsuit because I felt that someone needed to address the unfair work practices that were happening for people delivering Amazon packages. I took on these risks because there was a lot of time that I spent at this job that I was not paid for, and that is not right."); Skinner Decl. at ¶¶ 23-26 ("I know that my name is publicly linked to this case and that many employers don't want to hire people that would bring these kinds of lawsuits. I had concerns that I might be retaliated against for participating in this case, but I wanted to go forward with this because I think these claims are important. I took on these risks because I did not want other delivery associates to go through what I went through, because it was terrible."); Alley Decl. at ¶¶ 25, 27-29 (describing anxiety around participating, as well as concerns about employability in the delivery field for her as well as her boyfriend, but that ultimately she "decided it was too important for me to move forward to make sure my co-workers would be treated fairly and be paid for their hard work"); *see also* Supp. Hancock Decl. ¶ 9 (describing expungement work and prevalence of background checks in hiring practices); Supp. Schalman-Bergen Decl. ¶ 63.

[11] For example, in *Southern Star Express v. Page*, a Delivery Service Provider of Amazon brought a declaratory judgment action against a Delivery Associate represented by Undersigned Counsel, seeking to declare an arbitration agreement enforceable as well as bringing claims for defamation

that these circumstances did not occur here does not lessen the risk of stepping forward to pursue a lawsuit. *Id.* at ¶ 63 ("[t]hat is the nature of risk.") The payments help to account for the risks that the Named Plaintiffs took in light of the benefit they delivered to the collective members.

*Second,* the Named Plaintiffs' personal involvement in the case was invaluable to its success. The Named Plaintiffs actively participated in the ADR process, including at the mediations, and worked with Plaintiffs' Counsel, providing background information about their employment, about Defendants' policies and practices, and about the allegations. *See* Supp. Schalman-Bergen Decl. ¶¶ 54-57; Starnes Decl. ¶¶ 6-13; Skinner Decl. ¶¶ 7-12, 15; Alley Decl ¶¶ 8-16. The Named Plaintiffs provided significant, detailed information and documents to Plaintiffs' Counsel, taking time out of their lives to assist with the matter as needed.  *See* Supp. Schalman-Bergen Decl. ¶ 56; Starnes Decl. ¶¶ 6-17, 21; Skinner Decl. ¶¶ 7-19; Alley Decl ¶¶ 8-18, 26. This incredibly valuable and important information permitted counsel to assess the claims, push back on defense counsel's representations about factual issues, and help the mediator to understand the relevant issues and Plaintiffs' claims. Supp. Schalman-Bergen Decl. ¶ 59. Indeed, during the course of mediation, Defendants insisted on hearing about detailed experiences of the Named Plaintiffs in connection with the mediations as a precondition to settlement discussions. *Id*. The Named Plaintiffs waited for a long time to see this case come to fruition, in order to ensure that best possible result was reached against well-resourced Defendants on behalf of all of the workers

---

and business disparagement, premised on the Delivery Associate's pursuing of his claims under the FLSA. *See* Amended Complaint, *Southern Star Express, LLC, v. Page*, No. 19-cv-01423 (W.D. Tex.), ECF No. 15. The Delivery Associate, represented by Undersigned Counsel, counterclaimed, alleging, *inter alia*, that the defamation and business disparagement claims were retaliatory. *See* Partial Answer, *Southern Star Express, LLC, v. Page*, No. 19-cv-01423 (W.D. Tex.), ECF No. 21. The matter resolved prior to a ruling on the merits. This case exemplifies the risk that Delivery Associates (and named plaintiffs generally) undertake when coming forward to pursue claims against their current and former employers.

who will receive a benefit from this settlement. *See* Supp. Schalman-Bergen Decl. ¶¶ 57-58. The Named Plaintiffs were prepared to litigate this matter if a settlement could not be reached, including sitting for deposition or testifying at trial. Starnes Decl. ¶ 22; Skinner Decl. ¶ 23; Alley Decl ¶ 25.

Courts in this District and across the Circuit have repeatedly approved additional payments of $10,000 or more per plaintiff on the basis of the time and energy devoted to precisely what the Named Plaintiffs have done here: providing documents and information on which the litigation was based, assisting in the early stages of litigation, and providing insights and assistance in mediation.[12] These courts affirmed that payments in the range requested by the Named Plaintiffs are warranted (even where the litigation did not proceed to the deposition or trial stage) when "there would be no benefit to the Settlement Class Members if Plaintiffs had not stepped forward and prosecuted this matter to the current resolution." *In re Cigna-Am. Specialty Health Admin. Fee Litig.*, 2019 WL 4082946. The requested payments here are warranted.

---

[12] *See*, *e.g.*, *High St. Rehab., LLC*, 2019 WL 4140784, at *15 (approving $10,000 award where named plaintiffs "assist[ed] Class Counsel with discovery and the mediation"); *In re Cigna-Am. Specialty Health Admin. Fee Litig.*, No. 2:16-cv-03967, 2019 WL 4082946, at *16 (E.D. Pa. Aug. 29, 2019) (same); *Brown v. Progressions Behav. Health Servs., Inc.*, No. 16-cv-6054, 2017 WL 2986300, at *7 (E.D. Pa. July 13, 2017) (approving $10,000 award where named plaintiffs "were actively involved in the litigation since before it was commenced, they provided the information and documents that formed the basis for the lawsuit, and they were willing to assume the risk associated with being a named plaintiff in a class action lawsuit against their current employer"); *Gregg v. Trustees of Univ. of Pennsylvania*, No. 09-cv-5547, 2011 WL 11703782, at *2 (E.D. Pa. June 10, 2011) (approving $10,000 award where named plaintiffs "have been actively involved in this litigation since prior to its commencement. They have met with class counsel on numerous occasions, and were a substantial and necessary source of information."); *Copley v. Evolution Well Servs. Operating, LLC*, No. 2:20-cv-01442, 2023 WL 1878581, at *4 (W.D. Pa. Feb. 10, 2023) (approving $10,000 award for named plaintiffs on the basis that these "individuals significantly contributed to the resolution of this action, by providing pre-litigation background information and participating in settlement negotiations, and faced substantial risks by joining at the nascent stages of the litigation"); *see also, e.g., Carroll v. Northeast Community Center for Behavioral Health*, No. 21-cv-01288 (E.D. Pa. Apr. 14, 2023), ECF No. 48 (Pappert, J.) (approving $15,000 service award in $300,000 collective action settlement where the named plaintiff was not deposed).

*Third,* this Court has considered the "lack of personal benefit compared to the risk in suing [an] employer and extensive personal involvement" when considering additional payments in the context of a Rule 23 settlement. *See Schaub v. Chesapeake & Delaware Brewing Holdings*, No. CV 16-756, 2016 WL 9776070, at *5 (E.D. Pa. Nov. 14, 2016). Here, despite the risks they took and their extensive involvement as described *supra*, the Named Plaintiffs receive no additional benefit beyond their *pro rata* share of the common fund, which is based on the number of weeks they worked four or more days per week. And here, although the duration of the matter in court is relatively short, the plaintiffs have spent these significant efforts over a number of years for this settlement to come to fruition on behalf of all of the workers. *See* Schalman-Bergen Decl. ¶ 57; Starnes Decl. ¶¶ 23-27; Skinner Decl. ¶¶ 24-27; Alley Decl ¶¶ 27-31. Further, the total amounts of the payments are a comparatively tiny amount of the common fund, representing less than 1.5% of the fund, *after* accounting for proposed attorneys' fees and costs. *See, e.g., Carroll*, No. 21-01288 at ECF No. 48 (approving $15,000 service award in $300,000 collective action settlement). This factor further supports that the payments do not otherwise impact the fair and reasonable resolution of the *bona fide* dispute, particularly in light of the risks Named Plaintiff assumed and the broad release they entered into – over and beyond the release for other collective members – with the Defendants.

The Court should not void the additional payments to the Named Plaintiffs.

## III. A Lodestar Cross-Check Further Supports Plaintiffs' Counsel's Request for Fees

The Court's Order further grants Plaintiffs leave to supplement "with attached billing records for efforts performed solely in this matter for the Plaintiffs to allow us to perform a lodestar cross-check." ECF No. 11. Accordingly, Plaintiffs submit this supplemental submission with factual and legal authority regarding the lodestar crosscheck for the requested fees.

As detailed in Plaintiffs' Memorandum, while courts in the Third Circuit have engaged in a lodestar cross-check when approving fees under the percentage of the fund method, such a lodestar cross-check is "not necessarily determinative." *McDermid v. Inovio Pharmaceuticals, Inc.*, No. 20-cv-01402, 2023 WL 227355 (E.D. Pa. Jan. 18, 2023) (citing *In re Baby Prods. Antitrust Litig.*, 708 F.3d at 179-80); Mem. at 18 n.19 (citing cases); *see also, e.g., Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at *1 (E.D. Pa. Sept. 27, 2017) (approving attorney fee request without lodestar cross-check).

Indeed, courts within this Circuit recognize that "the relevance of this method is increasingly challenged by the realities of today's legal practice."[13] *Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114, at *10 (E.D. Pa. Sept. 27, 2017) (approving attorneys fee of 35% of settlement fund without lodestar crosscheck). Likewise, in this case, where Plaintiffs' Counsel has engaged in significant work that was directly responsible for the result here, including in prior litigation, but also in contemporaneous work performed as part of the three-year ADR process that was not for "efforts performed solely in this matter," ECF No. 11, a strict application of a lodestar cross-check is not the most meaningful metric. *See generally* Mem. at 1-4 (detailing ADR process); 14-20 (discussing relevant factors for fee request).

The Third Circuit has directed that, if a lodestar cross-check is conducted, the "calculation need entail neither mathematical precision nor bean-counting." *In re Rite Aid Corp. Sec. Litig.*,

---

[13] It is notable that many large law firms in today's legal market, including Morgan Lewis (counsel representing the Defendants here), often engage their clients in arrangements that are not strictly based on a billable hour. *See, e.g.,* Morgan Lewis Press Release, *Morgan Lewis Named Among The Best By Clients For Alternative Fee Arrangements* (Apr. 28, 2016) (available at https://www.morganlewis.com/news/2016/04/morgan-lewis-named-among-the-best-by-clients-for-alternative-fee-arrangements) (BTI Consulting Group "listed Morgan Lewis among 22 firms that in-house counsel, without prompting, cited as the best at making these fee arrangements—a category that includes fixed fees, capped fees, and other alternatives to traditional billing—successful in controlling costs.").

396 F.3d 294, 306 (3d Cir. 2005), *as amended* (Feb. 25, 2005); *accord McDermid,* 2023 WL 227355, at *13. District courts "may rely on summaries submitted by the attorneys and need not review actual billing records."[14] *Id.* Notably, "the resulting multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award." *Id.*

As of the date Plaintiffs filed their motion for approval, Plaintiffs' Counsel's combined lodestar for efforts performed solely in this matter was $282,636.50, resulting in a multiplier of 3.57. *See* Supp. Schalman-Bergen Decl. at ¶ 48, Ex. B; Supp. Wallin Decl. at ¶¶ 18-19; Supp. Hancock Decl. at ¶ 19. As directed by the Court, this includes only billing entries that reflected "efforts performed solely in this matter." Significant amounts of time were spent engaging in activities in the ADR Process described herein that directly benefitted this matter, but were not "solely" performed for this matter. Supp. Schalman-Bergen Decl. at ¶¶ 39-41.[15]

Including time since filing their Motion, Plaintiffs' Counsel's collective total lodestar as of the filing of this Motion is $336,129.50 for efforts solely in this matter, representing a multiplier

---

[14] While Plaintiffs submit their billing records on the docket per the Court's Order, certain entries reveal work product and attorney-client privileged information, so Plaintiffs have redacted this information. *See, e.g., In re Diet Drugs*, 582 F.3d 524, 539 (3d Cir. 2009) (holding that the district court need not have "considered and made public Class Counsel's individual billing records"); *accord In re Nat'l Football League Players' Concussion Inj. Litig.*, 814 F. App'x 678, 683 n.8 (3d Cir. 2020) (explaining that "since the lodestar served only as a cross-check, it was within the Court's discretion to decline to make public the billing records"). Should the court require un-redacted records, Plaintiffs request to submit same for the Court's *in camera* review in light of the privileged nature of the information.

[15] General categories of work that benefitted this case that were not performed solely for this matter include, without limitation: communications with counsel for Defendants regarding the settlement process; settlement negotiations with counsel for Amazon; team meetings to discuss strategy and make assignments; overseeing and building a damages model with the delivery data provided so that the parties could engage in fully informed negotiation on an equal footing; legal research relating to the potential claims and defenses at issue that are common to the DAs; factual investigation of the claims of DAs; negotiating Memorandums of Understanding for use in multiple matters; and engaging a settlement administrator through a rigorous Request for Proposal Process, which included numerous communications with administrators, counsel for Defendants, and co-counsel. Supp. Schalman-Bergen Decl. at ¶ 39.

of 3. *See* Supp. Schalman-Bergen Decl. at ¶ 49; Ex. B; Supp. Wallin Decl. at ¶¶ 18, 20; Supp. Hancock Decl. at ¶¶ 19, 20. And Plaintiffs' Counsel will spend significant amounts of time following Court approval ensuring that the settlement is properly administered, that settlement shares are correctly calculated, speaking with collective members and answering questions, and ensuring that the terms of the Settlement Agreement are followed. Supp. Schalman-Bergen Decl. at ¶¶ 42-43. By the conclusion of this litigation, it is estimated that Plaintiffs' Counsel collective lodestar will be approximately $384,587 for efforts solely in this matter, representing a multiplier of 2.62. *Id.* at ¶ 50; Ex. B. All of this should be considered in evaluating the reasonableness of fees requested. *See generally Whitely v. Zynerba Pharms., Inc.*, No. CV 19-4959, 2021 WL 4206696, at *14 (E.D. Pa. Sept. 16, 2021) (noting that counsel "is expected to perform additional work in connection with this case … as such, the multiplier will likely be lower by the time this matter is closed and Class Counsel's work is completed").

The resulting multiplier ranging between 3.57 and 2.62, depending on the date it is measured, is well within the range of approval of a fee award in an FLSA settlement, especially one in which Plaintiffs' Counsel's expertise and efficiency resulted in an early settlement for a substantial amount. For example, in 2018, a court within this District granted fees with a lodestar multiplier of 5.3 in an FLSA collective and state wage law settlement, recognizing that plaintiff's counsel "undertook significant risk to achieve a substantial settlement amount, and should not be penalized for settling the case early in the litigation." *See Arrington v. Optimum Healthcare IT, LLC*, No. CV 17-3950, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018) (granting 5.3 multiplier where lodestar was $307,189.50 and awarded fee was $1,633,333.33, representing one-third of the

total settlement).[16]   Like in *Arrington*, here, the size of the multiplier is the result of the case

settling for a substantial amount without protracted litigation directly related to this matter. *See*

*generally Sala v. Nat'l R.R. Passenger Corp.*, 128 F.R.D. 210, 215 (E.D. Pa. 1989) ("[I]t would

be the height of folly to penalize an efficient attorney for settling a case on the ground that less

total hours were expended in the litigation"); *see also Gunter v. Ridgewood Energy Corp.*, 223

F.3d 190, 198 (3d. Cir. 2000) (denying requested fees "merely because [c]ounsel were able to

---

[16] Like *Arrington*, other decisions within this Circuit have awarded fees in FLSA settlements with similar – and higher – multipliers as here. *See, e.g., Wood v. Amerihealth Caritas Services*, No. 2:21-5258-JP, Dkt. No. 91 (E.D. Pa. Feb. 22, 2023) (approving a 30% fee request with a multiplier greater than four in $2.5 million wage and hour settlement that was the result of early mediation and litigated by class counsel with significant experience in the area); *Wahpoe v. Staffmore LLC,* No. 19-1268, 2020 WL 5554413, at *4 (E.D. Pa. Nov. 4, 2014) (multiplier of slightly above 3 in FLSA collective action settlement); *Brown v. Progressions Behav. Health Servs., Inc.* No. CV 16-6054, 2017 WL 2986300, at *7 (E.D. Pa. Jul. 13, 2017 (multiplier of 3.1 in FLSA collective action settlement); *see also Fenley v. Applied Consultants, Inc.*, No. 2:15-cv-259, Dkt. No. 64 (W.D. Pa. June 17, 2016) (approving Berger Montague's fees and costs with multiplier of 5.17).

Moreover, district courts nationwide commonly approve fees reflecting multipliers ranging from 3 to over 5 in FLSA class and collective action settlements. *See, e.g., Pinzon v. Jony Food Corp.*, No. 18-CV-105 (RA), 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) (approving fees and costs with a multiplier of 5.23 as the court "recognize[d] the importance of encouraging the swift resolution of cases like this one and avoiding creating a disincentive to early settlement – particularly where such settlement has provided Plaintiff with a substantial and speedy result.") (citing *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), WL 2016 1222347, at *3 (S.D.N.Y. Mar. 24, 2016)) (internal quotations omitted); *Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (approving 5.1 multiplier in wage and hour settlement and noting "[w]hile this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing Plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial"); *Beckman v. Keybank, N.A.,* 293 F.R.D 467, 481-cv-482 (S.D.N.Y. 2013) (approving 6.3 multiplier in FLSA settlement, noting that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) 5.3 in wage and hour class action); *Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020) (multiplier of 5.29 in FLSA collective action); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *Buccellato v. AT&T Operations, Inc.*, No. 10-cv-463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (multiplier of 4.3 in wage and hour class action); *Monserrate v. Tequipment, Inc.*, No. 11 CV 6090 RML, 2012 WL 5830557, at *3 n.1 (E.D.N.Y. Nov. 16, 2012) (4.3 multiplier in FLSA settlement).

settle … ignore[s] the stated goal in percentage fee-award cases of ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation" and would further "penalize efficient counsel, encourage costly litigation, and potentially discourage able lawyers from taking such cases.").[17]

Here, Parties developed an arms' length ADR process to negotiate this and other settlements involving similar claims against DSPs based on substantial exchange and analysis of data, and investigation of the Plaintiffs' individualized allegations. *See* Supp. Schalman-Bergen Decl. ¶ 77. Plaintiffs' Counsel has worked on a contingent basis for years to bring this settlement to fruition, advancing substantial costs. *Id.* Plaintiffs' Counsel secured this excellent result by engaging in this methodical, detailed legal work, up against one of the largest corporations in the world represented by some of the most talented labor and employment legal counsel in the country. *Id.* This process took a substantial percentage of Plaintiffs' Counsel's time and effort, and at every step, Plaintiffs' Counsel took actions to further the best interests of the workers they represent. *Id.*

The compensation provided to the collective members for the relatively short period of time when each worked is meaningful. The risk of nonpayment (given Amazon's joint employer defense, and given that DeliverOL and Postalmile are no longer in operation) was great. It took

---

[17]  Even outside the wage and hour context, courts in this District regularly award attorneys' fees in this range and higher. *Stevens v. SEI Invs. Co.*, No. 18-cv-4205, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving one-third fee award that equated to a 6.16 multiplier in ERISA action, and noting "multiples ranging from 1 to 8 are often used in common fund cases" to "to compensate counsel for the risk of assuming the representation on a contingency fee basis"); *Bodnar v. Bank of Am., N.A.*, No. 14-cv-3224, 2016 WL 4582084, at *5-*6 (E.D. Pa. Aug. 4, 2016) (approving 33% fee where counsel was able to negotiate the settlement "at the early stages" of the litigation and finding 4.69 multiplier was "appropriate and reasonable"); *Meijer, Inc. v. 3M*, No. 04-cv-5871, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) ("While a 4.77 multiplier is slightly above average, it is not far outside the range of normal awards.") *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-cv-1014, 2005 WL 906361, at *12 (E.D. Pa. Apr. 18, 2005) (approving 3.1 multiplier); *In re Aetna Inc.*, No. MDL 1219, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001) (3.6 multiplier).

skill and diligence to reach this result, and the efficiencies utilized by the attorneys who prosecuted this matter brought material benefits to the collective. Plaintiffs' Counsel pursued this matter, as they pursue all matters, utilizing the time and effort necessary to bring the result to a conclusion.[18] The lodestar cross-check, even for efforts solely in this matter, is well within the range courts have approved and is consistent with the one-third fee courts in this District routinely approve in FLSA wage and hour actions.[19]  Plaintiffs respectfully request that the Court approve their Motion.

Dated: April 24, 2023                                     Respectfully submitted,

                                                          /s/ Sarah R. Schalman-Bergen
                                                          Sarah R. Schalman-Bergen (PA 206211)
                                                          Krysten Connon (PA 314190)
                                                          LICHTEN & LISS-RIORDAN, P.C.
                                                          729 Boylston St., Suite 2000

---

[18] Notably, in several of the other lawsuits Plaintiffs' Counsel has pursued involving Delivery Associates, the lodestar crosschecks resulted in a negative multiplier – meaning that the value of time expended exceeded the value of attorneys' fees ultimately recovered. *See* Supp. Schalman-Bergen Decl. ¶¶ 72-73 (citing *Hickman v. TL Transportation*, No. 2:17-01038-GAM (E.D. Pa.) (ECF Nos. 128-1, 128-2, 130) (one third fee request approved represented .85 multiplier);  *Green v. Amazon.com, et al*., No. 1:18-cv-1102 (M.D.N.C. Oct. 26, 2020) (ECF Nos. 36-5, 37, 38) (approved 1/3 fee of $70,833 represented approximately 58% of lodestar, not including all the work necessary to bring the settlement to a close); *Gaines v. Amazon.com, LLC, et al.*, No. 1:19-cv-00528-WMR (N.D. Ga. Jul. 1, 2020) (ECF Nos. 71-5, 71-1, 72, 75) (approved 1/3 fee of $83,333 represented approximately 37.71% of lodestar, not including all the work necessary to bring the settlement to a close); *Gongaware v. Amazon.com, et al.*, No. 1: 18-cv-08358 (N.D. Ill. May 24, 2021) (ECF Nos. 92, 92-1, 100) (approved one-third fee of $183,333 represented approximately 30% of lodestar of more than $600,000 for more than 1,100 hours prosecuting the litigation, not including all the work necessary to bring the settlement to a close)).

[19] *See, e.g., Fein*, 2017 WL 4284116, at *12 (collecting cases and noting that "courts often find a benchmark of one-third of the settlement fund appropriate" and approving attorney fee award of one-third settlement fund in wage and hour matter); *Devlin v. Ferrandino & Son, Inc.*, No. 15-cv-4976, 2016 WL 7178338, at *9 (E.D. Pa. Dec. 9, 2016) ("An award of approximately one-third of the common fund as an attorney's fee to class counsel is common in FLSA class action settlements."); *see also Katz v. DNC Servs. Corp.*, No. 16-cv-5800, 2023 U.S. Dist. LEXIS 65901, at *28 (E.D. Pa. Apr. 14, 2023) (Pratter, J.) (finding that "on its face, [a $1,166,666 request for attorneys fees, which equals one-third (33 1/3%) of the Class Settlement Fund] appears fair, reasonable, and adequate"); *Baxter v. Silver Heart Healthcare Agency*, No. 22-cv-3262-KSM, Dkt. No. 19 (E.D. Pa. Apr. 10, 2023) (Marston, J.) (in individual FLSA settlement, finding one third of the settlement amount "reasonable given the result reached for Plaintiff and typical of fee awards in FLSA cases.").

Boston, MA 02116
Tel.: (617) 994-5800
Fax: (617) 994-5801
ssb@llrlaw.com
kconnon@llrlaw.om

Ryan Allen Hancock (PA 92590)
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Tel.: (215) 656-3600
Fax: (215) 567-2310
rhancock@wwdlaw.com

Michaela Wallin*
Alexandra K. Piazza (PA 315240)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4620
mwallin@bm.net
apiazza@bm.net

* *Pro Hac Vice forthcoming*

*Attorneys for Plaintiffs and the Proposed FLSA Collective*

21

## CERTIFICATE OF SERVICE

I served a copy of this document on all counsel of record via the Court's ECF system on April 24, 2023.

*/s/ Sarah R. Schalman-Bergen*

Sarah R. Schalman-Bergen