**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD STARNES, MELANIE** | : | **CIVIL ACTION** |
| **ALLEY, ANGEL SKINNER** | : | |
| | : | |
| **v.** | : | **NO. 23-484** |
| | : | |
| **AMAZON.COM, INC., AMAZON** | : | |
| **LOGISTICS, INC.** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                    **May 8, 2023**

Congress promotes the enforcement of minimum wage laws under the Fair Labor Standards Act by allowing federal courts to award reasonable attorney's fees and costs incurred by lawyers representing employees to be deducted from the employees' recovery. We encourage settlements of these wage claims. The claims are often resolved on behalf of several employees who choose to join the case. We appreciate experienced counsel invests time and expense without guaranty of payment. We also appreciate employees step forward and participate in prosecuting a wage claim against their employer who is often well-funded and motivated to defend its pay structure.

We today address the fairness of a proposed pre-suit settlement of wage claims brought by three employees for two companies who deliver Amazon products. The employees stepped forward years ago. Their experienced counsel negotiated their claims before suing along with claims by other employees of other delivery companies. They reached an agreement for over three million dollars in recovery and then filed this case.

The wrinkle today does not arise from the fairness of the settlement overall. We approve the fairness of the overall terms to resolve a bona fide dispute. We are instead concerned with a

one-third contingency fee (over a $1 million fee) taken from the employees for approximately $300,000 in services to date. We are also concerned with paying $10,000 each to the three employees for playing a role in the case and seemingly agreeing to release all claims regardless of whether their claims relate to the illegal wage structure.

The parties first asked us to approve their settlement with these terms taking money away from the employees without providing billing records or explaining why we deprive all employees of funds to award $10,000 each to three employees. We declined this approach and required the employees show us their records. We studied the records redacted in part to presumably protect descriptions of advices in an ongoing case. We now find the terms of the settlement resolve a bona fide dispute largely related to enforcing the Act. And counsel has now demonstrated a basis for the large amount of fees to be deducted from the employees' recovery. But counsel has not demonstrated a basis for depriving all employees of the $10,000 fee asked to be paid to each of the three employees as compensation for services and we do not approve depriving all the employees of funds set aside by the employers in exchange for the three employees releasing potential claims unrelated to the funds set aside to pay their co-employees. We decline to enforce the settlement under the proposed payment to the three employees but we grant them leave to negotiate a payment to the employees consistent with the services provided to all employees under the Act.

## I.    **Background**[1]

DeliverOL Global Inc. and Postalmile Inc. offer delivery services to Amazon through Amazon's delivery service provider program.[2] DeliverOL Global Inc. and Postalmile Inc. employ Delivery Associates, including Richard Starnes, Melanie Alley, and Angel Skinner, to deliver packages to Amazon's customers.[3]

Delivery Associates Starnes, Alley, and Skinner, and other Delivery Associates began their shifts at a designated Amazon delivery station to check in with an Amazon employee at the Amazon delivery station and pick up their assigned vehicles.[4] The Delivery Associates then waited until managers from DeliverOL and Postalmile arrived to provide them with a handheld scanning device containing an assigned route, gas card, and other materials related to their job duties.[5]

DeliverOL and Postalmile regularly scheduled the Delivery Associates to work four or more days per weeks for ten hour shifts without meal breaks.[6] But all of the work-related activities often took ten hours or more per day to complete.[7] And once the Delivery Associates finished delivering their assigned packages, they had to "rescue" other Delivery Associates by helping them deliver some of their undelivered packages.[8] Amazon required the Delivery Associates refuel their vehicles before returning to their designated delivery stations.[9] Delivery Associates unloaded their vehicles once they returned to the delivery station and checked in with their supervisors about the day's route.[10]

Delivery Associates Starnes, Alley, and Skinner, and other Delivery Associates performed many of their work duties when they were "not on the clock."[11] But Amazon allegedly did not pay its Delivery Associates for all hours worked more than forty hours in a workweek and did not pay proper overtime premiums.[12]

### *The Delivery Associates notified Amazon of wage-related claims in April 2019.*

Delivery Associates Starnes, Alley, and Skinner, on April 26, 2019—through counsel led by Sarah Schalman-Bergen, Esquire—notified Amazon.com, Inc. and Amazon Logistics, Inc. of the alleged wage-related claims against the Amazon companies. They told the Amazon companies they intended to sue on behalf of themselves and a collective of similarly situated individuals.[13] The parties agreed to engage in pre-litigation resolution of the alleged claims.[14]

The parties engaged in the alternative dispute resolution process for more than three years exchanging information and data.[15] They participated in three mediation sessions overseen by an experienced wage and hour mediator Dennis Clifford, Esquire on July 28–29, 2021, October 27–29, 2021, and March 8–11, 2022.[16] But the time the attorneys spent engaging in the alternative dispute process since 2019 also included other matters involving persons working for other companies to deliver packages on behalf of Amazon.[17]

The parties continued to engage in telephone and video discussions overseen by Mediator Clifford following the three mediation sessions.[18] These settlement discussions continued into mid-May 2022.[19] The parties drafted a settlement agreement on May 17, 2022.[20] From May 2022 through November 2022, the parties worked on revising the draft settlement agreement.[21] The parties finalized the draft agreement by mid-December 2022.[22] All parties signed the final settlement agreement on January 10, 2023.[23]

### *The Delivery Associates sue Amazon and ask our approval of the pre-suit settlement.*

Delivery Associates Starnes, Alley, and Skinner, after already signing the final settlement agreement, filed a Collective Action Complaint on February 7, 2023 against Amazon.com, Inc. and Amazon Logistics, Inc. seeking all available remedies under the Fair Labor Standards Act.[24] There are about 1,588 Settlement Collective Members who were paid by DeliverOL and about 981 Settlement Collective Members who were paid by Postalmile.[25]

The parties then informed us they reached a settlement on March 3, 2023, less than a month after filing suit.[26] The parties moved for our approval of their settlement about two weeks later on March 22, 2023 which they attribute to their pre-litigation discussions, negotiations, and mediations.[27] Counsel for the Delivery Associates explain their expertise in matters involving similar claims brought by Delivery Associates and efficiency resulted in this early settlement.[28]

*Terms of the settlement.*

The parties now ask us to approve their pre-suit settlement. The proposed settlement is between Delivery Associates Starnes, Alley, and Skinner individually and on behalf of the Settlement Collective, and Amazon.com, Inc. and Amazon Logistics, Inc.[29] The Settlement Collective is defined as:

> Plaintiffs and all Delivery Associates who were paid by DeliverOL Global Inc. to deliver packages to customers of Amazon.com in the United States at any time between November 1, 2016 through August 1, 2019 or who were paid by Postalmile Inc. to deliver packages to customers of Amazon.com in the United States at any time between October 11, 2017 and August 28, 2020.[30]

The Settlement Collective includes about 1,588 members who were paid by DeliverOL and about 981 members who were paid by Postalmile.[31]

The proposed settlement requires Amazon to pay $3,025,000.00 defined as the "Gross Settlement Amount" which includes: (1) $10,000 each to Richard Starnes, Melanie Alley, and Angel Skinner "for their efforts in bringing and prosecuting this matter and for their broader release of claims in favor of" Amazon; (2) Plaintiffs' Counsel's attorneys' fees not to exceed one-third of the Gross Settlement Amount ($1,008,333.33), plus out-of-pocket costs not to exceed $25,000.00; and (3) $5,000.00 to be put into a reserve fund.[32] The remaining balance—the "Net Settlement Amount"—will be distributed to the Settlement Collective using the following formula: each Settlement Collective Member will receive a minimum payment of $50, plus their *pro rata* portion of the Net Settlement Amount for each workweek when the individual worked four or more days.[33]

In exchange, the Settlement Collective members agreed to release:

> [A]ny and all Fair Labor Standards Act claims, and state, municipal, or local wage and hour claims that accrued to the Settlement Collective Members against the Released Parties [Amazon.com, Inc., Amazon Logistics, Inc., DeliverOL Global Inc., Postalmile Inc.,] while working to deliver packages to Amazon customers in the United States while being paid by either DeliverOL at any time between November 1, 2016 through August 1, 2019 or Postalmile Inc. at any time between

October 11, 2017 and August 28, 2020, including but not limited to claims under the FLSA and the states of Pennsylvania, North Carolina, Virginia, Colorado, Minnesota, and New York, or any other federal, state or local wage and hour law, pertaining to the alleged failure to pay for all hours worked, claims for unpaid wages (including overtime compensation), claims for working through meal or rest periods, and related claims for liquidated damages, interests, penalties, fees or costs, that were or could have been asserted in the lawsuit based upon the facts alleged in the operative complaint.[34]

The parties agreed to a broader release of claims for Delivery Associates Starnes, Alley, and Skinner in exchange for their $10,000 service payment:

> Named Plaintiffs agree to release and discharge Defendants and all other Released Parties finally, forever and with prejudice, from any and all causes of action, claims, rights, damages of any nature, penalties, liabilities, expenses, losses, and issues of any kind or nature whatsoever, whether known or unknown, that Named Plaintiffs have or may have against the Released Parties that arose prior to the date on which they executed this Agreement including without limitation any claims arising under the FLSA and any claims that were or could have been asserted in the Complaint based on the facts alleged for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under applicable wage and hour laws, as well as any claims, whether in law or equity, known or unknown, against Released Parties relating to Named Plaintiffs' employment (or alleged employment or joint employment) or termination of employment . . . [.][35]

The parties also included a confidentiality provision requiring they "not … disclose the terms of this settlement except in court papers filed to seek approval," before filing their initial motion for settlement approval with us and, before or after approval, "not issue a press release, hold a press conference, publish information about the settlement on any website . . . or otherwise publicize the settlement."[36]

The parties also agreed if we did "not approve the Settlement as provided herein, the Parties agree to engage in follow-up negotiations with the intent of resolving the Court's concerns that precluded approval, and, if feasible, to resubmit the settlement for approval within thirty (30) days."[37]

## II.   Analysis

The three Delivery Associates move unopposed for approval of their Fair Labor Standards Act settlement agreement under 29 U.S.C. § 216(b).[38] We must determine whether "the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'"[39] A proposed settlement warrants our approval if the settlement satisfies three elements: (1) the agreement must resolve a bona fide dispute under the Fair Labor Standards Act—meaning, it must "reflect[ ] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[;]" (2) the settlement must be "fair and reasonable for the employee(s)[;]" and (3) the settlement must not "impermissibly frustrate[ ] the implementation of FLSA in the workplace."[40]

### A.  We certify the Settlement Collective.

We must first address whether we can certify the Fair Labor Standards Act Settlement Collective before approving the proposed settlement.[41] The parties stipulated, for settlement purposes only, the applicable standards for certifying the collective are satisfied—the settlement members and Delivery Associates Starnes, Alley, and Skinner are similarly situated.[42] We agree the record supports this finding.

We conditionally certify a Fair Labor Standards Act collective for settlement purposes under 29 U.S.C. § 216(b) as: All current and former Delivery Associates who were paid by DeliverOL Global Inc. to deliver packages to customers of Amazon.com in the United States at any time between November 1, 2016 through August 1, 2019, or who were paid by Postalmile Inc. to deliver packages to customers of Amazon.com in the United States at any time between October 11, 2017 and August 28, 2020.

7

**B.  A bona fide dispute exists.**

We next determine whether the proposed settlement would resolve a "bona fide" dispute under the Fair Labor Standards Act.[43] "A dispute is 'bona fide' where it involves 'factual issues rather than legal issues such as the statute's coverage and applicability.'"[44] We "consider the substantive allegations and determine whether factual issues, specific to these parties, are actually in dispute."[45] "[A] dispute concerning overtime pay owed to class members is precisely the type of dispute the FLSA is designed to address."[46]

The disputes in this case concern: the extent to which the Amazon entities compensated the Delivery Associates for overtime hours worked; the appropriate rate at which the Delivery Associates should be paid overtime; whether Amazon could meet its burden is demonstrating good faith to avoid liquidated damages; whether Amazon could be held liable for the alleged violations as a joint employer; whether the Delivery Associates could obtain and maintain a collective action status; and whether the parties would appeal our legal or factual determinations, including collective action treatment, liability, and damages.[47]

We find the proposed settlement resolves a "bona fide" dispute of "factual issues rather than legal issues."[48]

**C.  The settlement agreement is fair and reasonable except for the service award.**

We next consider whether the settlement reached is fair and reasonable. This is not an exacting standard in most cases.[49] "If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable."[50]

Both parties are represented by counsel who have experience prosecuting, defending, and settling federal and state wage-and-hour claims.[51] And the parties employed an experienced

mediator to assist them in negotiating their settlement through the mediation process. We determine an initial presumption of fairness applies.

### 1.   The compensation terms are fair and reasonable.

After determining an initial presumption of fairness applies, we next consider whether the compensation terms of the settlement agreement are fair and reasonable.[52] In *Girsh v. Jepson*, our Court of Appeals outlined criteria for us to consider in assessing the fairness of class action settlements.[53] We use those same criteria when deciding whether to approve collective action settlements under the Fair Labor Standards Act.[54] While the factors provide a framework for our analysis, rigid application of these factors is neither required nor appropriate in the Fair Labor Standards Act context.[55] The factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[56]

These factors confirm the fairness and reasonableness of the proposed settlement. And we are persuaded by Judge Wolson's reasoned analysis in *Weirbach v. Cellular Connection, LLC* where he approved a Fair Labor Standards Act settlement as fair and reasonable where the parties settled the matter early-on which allowed them to avoid the costs of full-blown discovery, but "the Parties exchanged significant information and extensive briefing ahead of the mediation, giving them 'adequate appreciation' of the merits of their respective positions before reaching a settlement."[57]

The settlement of this case at such an early stage in the litigation—before even filing suit— conserves the parties and our resources. The parties settled before filing the Complaint and, like

the parties in *Weirbach*, exchanged information as part of the alternative dispute process for nearly three years and participated in three mediation sessions to resolve the dispute. Based on the exchanged information, the parties each modeled various damage and claim scenarios utilizing various factual and legal assumptions.[58] These assumptions included the amount of time worked in each workweek which appeared in data provided by Amazon, and the rate of overtime they would have been owed if the delivery associates prevailed on all claims.[59] The Gross Settlement Amount represents a compromise amount which totals more than four times the Delivery Associates' calculations utilizing the legal and factual assumptions Amazon argued were reasonable and proper.[60] The settlement will result in significant amounts of compensation being paid to the workers who worked for relatively short periods of time during the applicable relevant time periods.[61]

We find the settlement fund is fair and reasonable.

### 2. The requested attorney's fees are reasonable.

The next term of the settlement agreement we must review for its reasonableness is the requested attorneys' fees and costs. Congress, through the Fair Labor Standards Act, requires we allow "in addition to any judgment awarded to the plaintiff or plaintiffs . . . a reasonable attorney's fee to be paid by the defendant, and costs of the action."[62] We must "separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined."[63] To determine whether the attorneys' fees are reasonable in wage-and-hour cases, we look first to the percentage-of-recovery method.[64] The percentage-of-recovery analysis requires consideration of the following seven factors outlined by our Court of Appeals in *Gunter v. Ridgewood Energy Corporation*:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the

settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.[65]

There is no rigid formula for weighing these factors since "each case is different," and in some circumstances "one factor may outweigh the rest."[66] Our Court of Appeals has recognized fee awards in common-fund case generally range from twenty percent to forty-five percent of the overall settlement fund.[67] And "courts often find a benchmark of one-third of the settlement fund appropriate[.]"[68] But our Court of Appeals cautions given the wide range of percentage fees awarded, we "may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case."[69]

Amazon agrees to pay a Gross Settlement Amount of $3,025,000.00, with one-third (33.3%), or $1,008,333.33 of this amount intended to compensate Collective Members going toward attorneys' fees and costs not to exceed $25,000.

### i. The *Gunter* factors weigh in favor of the requested fees.

The first factor we consider—the size of the fund created, and the number of persons benefitted—weighs in favor of approval. First, "[a]s a general rule, the appropriate percentage awarded to class counsel decreases as the size of the fund increases."[70] This inverse relationship is based on the belief the increases in recovery are usually a result of the size of the class and not a result of the efforts of counsel.[71] In *Bredbenner v. Liberty Travel, Inc.*, Judge Falk found a common fund of $3 million for over one thousand class members "substantial" but did not create a "mega-fund."[72] The fund here—$3,025,000.00 to resolve the claims of about 2,569 delivery associates—does not constitute a mega-fund so large to make a typical percentage award unreasonable.[73]

The second factor asks us to consider whether there were any objections to the fee award, which there were none. Although this is a collective action (and not a Rule 23 class action), this factor still weighs in favor of approval.[74]

The third factor requires us to consider the skill and efficacy of the attorneys involved, which weighs in favor of approval. Counsel for the delivery associates have significant experience in employment law and Fair Labor Standards Act class and collective actions.[75]

The fourth and six factors—the complexity and duration of litigation and the amount of time devoted to the matter—weigh in favor approval. Although less than two months after suing Amazon under the Fair Labor Standards Act, the Delivery Associates moved unopposed for our approval of their settlement agreement, this case did not begin on February 7, 2023. Instead, Attorney Schalman-Bergen notified Amazon on April 26, 2019—about three years before filing the collective action Complaint—of the alleged wage-related claims the Delivery Associates had against Amazon and their intent to sue on behalf of themselves and a collective of similarly situated individuals.[76]

The duration of this litigation and amount of time spent by the Delivery Associates' counsel on this matter also weighs in favor of approval. The amount of total hours the Delivery Associates' counsel spent solely on this matter—including the three mediation sessions—as of March 22, 2023 (the date counsel moved for our approval of the collective action settlement) totaled 528.7 hours, and as of April 21, 2023 (the date counsel filed their supplemental memorandum in support of their Motion for our approval of the collective action settlement) totaled 621.5 hours.[77] Although the parties engaged in no formal discovery, and signed the settlement agreement before filing the Complaint, they spent hours negotiating with counsel for Amazon, overseeing and building a

damages model, researching potential claims and defense, and investigating the factual claims of the delivery associates.[78]

The fifth factor—the risk of nonpayment—as in most cases, weighs in favor of approval. If this matter proceeded to summary judgment and then trial, there is a risk of no recovery considering counsel agreed to represent the delivery associates on a contingency fee basis.[79]

Finally, the last factor—the awards in similar cases—generally favors approval because judges in our district have allowed attorneys' request for one-third of the settlement fund in Fair Labor Standards Act settlements.[80]

We find all the *Gunter* factors weigh in favor of the attorneys' requested fee of $1,008,333.33 given the complexity and duration of litigation and the amount of time devoted to this matter.

### ii.    The lodestar cross-check supports the attorneys' requested fees.

The reasonableness of counsels' requested fees is further supported when we consider the award which would have been permitted when applying the "lodestar" method. Our Court of Appeals recommends we use "the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award."[81] The lodestar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate."[82] To determine the lodestar crosscheck, the requested fee award is divided by the lodestar calculation.[83] "[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied[.]"[84] "A lodestar multiplier of less than one . . . reveals that the fee request constitutes only a fraction of the work that the attorneys billed and thus favors approval."[85]

We recognize judges have found multipliers within the range of one to four awarded in common fund cases. For example, Judge Ranjan in *Kapolka v. Anchor Drilling Fluids USA, LLC*,

found a lodestar multiplier of 2.54 reasonable "because of the risk undertaken by Plaintiffs' counsel handling this matter on a contingent basis, the substantial attorney time and resources expended litigating the case and negotiating a settlement, the positive result obtained for the prospective class, and the public interests advanced by FLSA litigation."[86] There, the parties established a gross settlement fund of $1,105,000.00 and the attorneys requested $386,750.00 in fees—35% of the settlement fund.[87] Judge Ranjan considered how counsel spent about 300 hours on this matter rendering services value at $141,870.00 which included drafting pleadings, discovery requests, and other filings; participating in court hearings; negotiating; preparing for and engaging in mediation, and reviewing discovery.[88]

Judge Hey approved a settlement in a Fair Labor Standards Act collective action in *Brown v. Progressions Behavioral Health Services, Inc*., and found the attorneys' fees reasonable, which totaled 33% of the settlement amount.[89] Judge Hey considered the amount of hours worked (287.06 hours) and cross-checked with lodestar by dividing the percentage-method award ($285,450.00) by the lodestar amount ($91,866.24) which resulted in a lodestar multiplier of 3.1.[90] She found this multiplier reasonable given "[a] multiplier of 3.1 falls within the range generally approved in common fund cases."[91]

We are also guided by Judge Rice's reasoned analysis in *Arp v. Hohla & Wyss Enterprises, LLC* approving an Fair Labor Standards Act class and collective action settlement on behalf of a class of delivery drivers.[92] Counsel requested one-third of the settlement fund as a fee award.[93] Judge Rice cross-checked the fees requested with the lodestar by dividing the percentage-method award ($333,000.00) by the lodestar amount ($62,416) which resulted in a lodestar multiplier of about 5.29.[94] Judge Rice found the lodestar multiplier of 5.29 to be acceptable and supported the requested fee, in part, because "the lodestar in this case does not tell the whole story."[95] He

considered how the lodestar does not reflect counsels' work "in other delivery driver cases that directly benefited the class in this case."[96] Judge Rice reasoned "[i]t would be inequitable for a court to reduce a fee award based on a lodestar cross-check without considering a law firm's work other cases raising the same or similar issues" because "[t]hat work may . . . substantially enhance the result Class Counsel is able to achieve."[97] He found this "true for several reasons, including that (1) successfully litigating a particular issue may improve the settlement prospects of cases raising the same issue, (2) developing expertise in a specific niche improves the firm's ability to effectively litigate within that niche, and (3) the work product from one case can be used in a case raising the same issue, resulting in value that is not adequately reflected in a lodestar calculation."[98]

We also face a unique litigation posture given the amount of time invested by counsel to resolve the claims before filing suit. As of March 22, 2023 (the date counsel moved for our approval of the collective action settlement), the lodestar calculation totaled $282,636.50.[99] Dividing the requested attorneys' fees ($1,008,333.33) by the lodestar calculation ($282,636.50) results in a lodestar crosscheck of about 3.57.[100] But as of April 21, 2023 (the date counsel filed their supplemental memorandum in support of their Motion for our approval of the collective action settlement), the lodestar calculation totaled $336,129.50.[101] Dividing the requested attorneys' fees ($1,008,333.33) by the lodestar calculation ($336,129.50) results in a lodestar crosscheck of about 3.0.[102] And by the end of this matter, counsel anticipates a lodestar of $384,587.00 (an additional 92.5 hours), which by dividing the requested attorneys' fees ($1,008,333.33) by the lodestar calculation ($384,587.00) results in a lodestar crosscheck of about 2.62.[103] We may consider these future costs when they are found to be reasonable.[104]

We find a lodestar cross-check of between 3.57 and 2.62 within the range awarded in common fund cases when the lodestar method can be applied and justified in this case given the

facts and circumstances of this matter. Like in *Kapolka*, where Judge Ranjan found a multiplier of 2.54 supported the reasonableness of the attorneys' requested fees given the work the attorneys performed on the matter, counsel here spent hours negotiating with counsel for Amazon, overseeing and building a damages model, researching potential claims and defense, and investigating the factual claims of the Delivery Associates.[105] Counsel risked handling this matter on a contingent fee basis, and spent substantial time and resources negotiating a settlement, and obtained a positive result for the Settlement Collective.

And we also consider how, like Judge Rice found in *Arp*, "the lodestar in this case does not tell the whole story" because it does not reflect counsels' work in other Delivery Associate cases against Amazon which directly benefited this matter.[106] Although we found no judge in our District employing Judge Rice's rationale, we find it persuasive here. Counsel for the Delivery Associates obtained positive results in multiple Fair Labor Standards Act class and collective actions on behalf of other Delivery Associates against Amazon which directly benefited the class in this case. For example, in *Hickman v. TL Transportation, LLC*, counsel for the Delivery Associates settled a Fair Labor Standards Act class and collective wage claim against Amazon for $1,800,000.00 on behalf of Delivery Associates employed by TL Transportation, LLC to deliver packages to Amazon customer.[107] Judge McHugh approved the final settlement agreement on February 18, 2020.[108] Counsels' efforts in *Hickman*, and success in settling other Fair Labor Standards Act class and collective actions on behalf of delivery associates, directly benefited the Delivery Associates here.[109]

We find the proposed award of $1,008,333.33 reasonable under the lodestar cross-check.

### 3.   We approve counsels' requested costs.

Congress, through the Fair Labor Standards Act authorizes us to order Amazon to pay a counsels' reasonable costs, along with their attorneys' fees.[110]

Counsel for the delivery associates seeks costs not to exceed $25,000.00.[111] As of March 22, 2023, the expenses incurred by counsel totaled $9,819.20.[112] Counsel anticipates incurring additional costs in connection with carrying out this settlement.[113] And counsel provides "[a]ny remaining balance under the request[] not to exceed will be distributed to Settlement Collective Members."[114]

We find costs not to exceed $25,000 reasonable provided the remaining balance under the request not to exceed $25,000 be distributed to the Settlement Collective members.

### 4.   The $10,000 service award for each Delivery Associate is not reasonable.

We must also determine whether the agreed $10,000 service awards to Delivery Associates Starnes, Alley, and Skinner are fair and reasonable. Service awards, also known as incentive awards, enhancement awards, or service payments, "are common in class actions that result in a common fund for distribution to the class" and are meant "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation."[115] Where the proposed incentive award comes from the common fund independent of attorneys' fees, as it does here, we "must 'carefully review' the request for fairness to other class members."[116] We need to ensure the fairness of payments taking money away from other Collective Members.

In *Weirback*, Judge Wolson found the $3,500 services awards to each of the two named plaintiffs who brought the Fair Labor Standards Act collective action fair and reasonable considering the individuals risked their current and/or future employment and they provided "invaluable service in aid of" the prosecution of their collective action including "sitting for

extensive pre-suit interviews, providing crucial documents, submitting declarations, giving insight into [] defenses, and making themselves available for the full-day mediation."[117] Judge Wolson reasoned "a modest award of $3,500 is well-within the range of similar awards approved in other collective/class actions in this district."[118]

Judge Wolson found a slightly larger service award of $5,000 fair and reasonable for the class representatives in an Fair Labor Standards Act class action in *Caddick v. Tasty Baking Company*.[119] He considered how the class representatives "provided invaluable service[s]" including sitting for extensive pre-suit interviews, providing crucial documents, submitting declarations, giving insight into the employer's defenses, and making themselves available for the full-day mediation.[120] Judge Wolson recognized "a modest award of $5,000.00 is within the range of similar awards approved in other collective/class action[s] []in this district.[121]

Judge Goldberg considered an even larger service payment in the context of an Fair Labor Standards Act Fair Labor Standards Act class and collective action in *Alvarez v. BI Incorporated*.[122] Judge Goldberg found a $15,000 service award to each of the two named plaintiffs fair and reasonable.[123] Judge Goldberg recognized the named plaintiffs took significant risks by coming forward to represent the interests of their fellow employees, and worked with counsel to provide background information about their employment, their employer's policies and procedures, and the allegations in the complaint.[124] The employer deposed both named plaintiffs and each attended multiple mediation sessions.[125] Judge Goldberg concluded "a service payment of $15,000 is in line with what the courts in this Circuit have approved in other FLSA collective and class actions."[126]

The parties here, through the settlement agreement, propose $10,000 payments to Delivery Associates Starnes, Alley, and Skinner for their active role in participating in the alternative

dispute process, including at mediations, and providing background information about their employment and Amazon's policies and practices, **and** "for providing a broader release of claims that could not otherwise be obtained in an FLSA action."[127]

But a proposed award of $10,000 for the services Delivery Associates Starnes, Alley, and Skinner provided is unreasonable. We acknowledge all three individuals took risks by coming forward on behalf of the other delivery associates.[128] And they worked with counsel to provide background information and documents about their employment and Amazon's policies and practices, helped prepare for the mediation sessions, made themselves available throughout the mediation sessions, and reviewed relevant documents such as the draft Complaint.[129]

We find our facts like those in *Weirback* and *Caddick*, where Judge Wolson found the $3,500 and $5,000 service awards to the named plaintiffs reasonable, but modest. Like the named plaintiffs in *Weirback* and *Caddick*, Delivery Associates Starnes, Alley, and Skinner also risked their employment, sat for interviews, provided crucial documents, submitted declarations, and made themselves available for the full-day mediation. But unlike the named plaintiffs in *Alvarez*, to whom Judge Goldberg awarded a $15,000 service payment, Delivery Associates Starnes, Alley, and Skinner never sat for depositions, and none of them attended the mediation sessions.

We find $10,000 for the services rendered by Delivery Associates Starnes, Alley, and Skinner in this case to be an unreasonably high amount. And we do not approve of the broad release of claims, which the parties also agreed to in exchange for the $10,0000, because it frustrates the purpose of the Fair Labor Standards Act, as we discuss more fully below. We grant the parties leave to resubmit the settlement for our approval with a proposed service fee in line with the services rendered by Delivery Associates Starnes, Alley, and Skinner guided by our reasoning today.

### D.  The settlement agreement's broad release provision frustrates the purpose of the Fair Labor Standards Act.

We finally must determine whether the proposed settlement agreement furthers or impermissibly frustrates the implementation of the Fair Labor Standards Act in the workplace.[130] "The congressional purpose of the FLSA and the public's interest in the transparency of the judicial process" requires us to scrutinize Fair Labor Standards Act settlements for "the existence of side deals or other conditions not present on the face of the employer's offer, including constraints on employees beyond their full compensation under the FLSA."[131]

The settlement agreement contains two "side deals"—the confidentiality clause and the release provisions.

#### 1.  The confidential clause does not frustrate the purpose of the Fair Labor Standards Act.

"Courts have rejected as unreasonable confidentiality provisions in FLSA settlement agreements . . . [which] allow employers to silence employees who have vindicated a disputed FLSA right and interfere with Congress's intent to ensure widespread compliance with FLSA."[132] In *Alvarez*, Judge Goldberg found a confidentiality provision in the class and collective action settlement did not unreasonably frustrate the purpose of the Fair Labor Standards Act where it only barred the parties from discussing the settlement with the media, but not from discussing the lawsuit with other employees.[133]

The confidentiality provision before us today is not so restrictive to frustrate the purpose of Fair Labor Standards Act. The confidentiality provision requires the parties "not to disclose the terms of this settlement except in court papers filed to seek approval," before the initial motion approval and "not issue a press release, hold a press conference, publish information about the settlement on any website . . . or otherwise *publicize* the settlement" before or after our approval.[134] The settlement agreement and all filings in this case remain publicly available. And the terms of

the confidentiality provision are narrowly drawn to prohibit only public statements to the press. The parties' agreement does not prohibit discussion of the terms generally. The confidentiality does not penalize without further due process. So the parties are free to discuss the litigation and settlement with friends, family, employees, and individuals not affiliated with the press.

The confidentiality provision does not frustrate the purpose of Fair Labor Standards Act.

## 2. The broad release frustrates the Act's purpose.

The proposed settlement contains two release provisions: (1) a narrow release for the Settlement Collective members; and (2) a broader release for Delivery Associates Starnes, Alley, and Skinner. We frequently require litigants to limit the scope of waiver and release provisions to "claims related to the specific litigation" when reviewing proposed Fair Labor Standard Act settlement release provisions.[135] Generally, "releases that preclude a plaintiff from raising 'any and all' claims against his employer are too broad."[136]

The first release pertaining to the Settlement Collective members is sufficiently tailored so as not to frustrate implementation of the Fair Labor Standards Act. The release limits the scope of the waiver to claims which "were or could have been asserted in the lawsuit based upon the facts alleged in the operative complaint."[137]

But we find the broader release for Delivery Associates Starnes, Alley, and Skinner frustrates the implementation of the Fair Labor Standards Act. This broader release requires these individuals to release Amazon "from ***any and all*** causes of action, claims, rights, damages of any nature, . . . and issues ***of any kind or nature whatsoever***, whether known or unknown, that [they] have or may have against the Released Parties that arose prior to the date on which they executed this Agreement . . .[.]"[138]

We are persuaded by Judge Goldberg's reasoning in *Alvarez* where he struck a very similar provision proposed by the same counsel here, Attorneys Schalman-Bergen and Hancock, in a Fair

Labor Standards Act settlement agreement.[139] He found such a release "pervasive and overbroad" as it required the named plaintiffs to waive "any and all . . . claims . . . of any kind . . . arising out of any matter occurring or accruing on or at any time before the date each Named Plaintiff signs this Settlement Agreement."[140] Judge Goldberg could not "ignore the overwhelming disfavor of such broad general release provisions in FLSA collective actions."[141] And although in *Alvarez*, the parties explained they agreed to the broad release "in consideration for their service awards," Judge Goldberg found this insufficient because he approved the service awards to the named plaintiffs for their *service* in prosecuting the action.[142] And Judge Goldberg emphasized how he had no "knowledge as to the value of the non-FLSA claims Named Plaintiffs have waived in consideration for their service awards."[143]

We decline to approve the broad release of Delivery Associates Starnes, Alley, and Skinner's claims against Amazon. Although the parties acknowledge each of these three individuals purchased products on Amazon and their general releases encompass any claims arising out of these purchases, we have no way to assess the value of these non-Fair Labor Standards Act claims.[144] The $10,000 payment does not relieve us of our "duty to police unequal bargaining power between employees and employers."[145] And, as in *Alvarez*, we find a service award appropriate only for the *services* rendered in prosecuting this action and for the risks incurred, but not for the broad release of claims.

We will allow the parties to submit a revised settlement agreement addressing our concerns as to this broad release provision.

## III.   Conclusion

We find a conditional certification of a Fair Labor Standards Act collective for settlement purposes under 29 U.S.C. § 216(b) appropriate. And we find: the proposed settlement resolves a

bona fide dispute between the parties; the approval of the settlement compensation terms is warranted, including the proposed allocation formula and the settlement fund for the Settlement Collective; the attorneys' fees and costs provisions are fair and reasonable; and the scope of the confidentiality provision and the general release provision with respect to the Settlement Collective do not frustrate the purposes of the Fair Labor Standards Act. But we find the $10,000 service award to Delivery Associates Starnes, Alley, and Skinner unreasonable given the services they performed, and we strike the broader release provision agreed to by these three individuals as it frustrates the purpose of the Fair Labor Standards Act.

We deny Plaintiffs' unopposed Motion for approval of Fair Labor Standards Act collective action settlement agreement without prejudice. The parties may timely submit a revised settlement agreement without altering their response obligations to address our concerns related to the service award and broad release provision.

---

[1] We derive our understanding of the facts from the Complaint (ECF Doc. No. 1), the parties' Memorandum supporting its unopposed Motion to approve a Fair Labor Standards Act settlement (ECF Doc. No. 10-1) the parties' supplemental submission (ECF Doc. No. 25), and the exhibits and declarations attached to these filings.

[2] ECF Doc. No. 1 ¶ 1.

[3] *Id*. Richard Starnes worked as a delivery associate from June 2017 to August 2018 in Pennsylvania. *Id*. ¶ 6. Melanie Allen worked as a delivery associate in Virginia from April 2018 to June 2018. *Id*. ¶ 7. Angel Skinner worked as a delivery associate in Virginia from October 2018 to January 2019. *Id*. ¶ 8.

[4] *Id*. ¶¶ 22, 24.

[5] *Id*. ¶ 23.

[6] *Id*. ¶¶ 25, 29.

[7] *Id*. ¶ 26.

[8] *Id.* ¶ 28.

[9] *Id.* ¶ 30. Delivery associates occasionally had to fuel their vehicles before starting their route and again after completing their route. *Id.*

[10] *Id.* ¶ 31.

[11] *Id.* ¶ 34.

[12] *Id.* ¶ 36.

[13] ECF Doc. No. 10-1 at 5–6. Attorney Schalman-Bergen led this litigation on behalf of the delivery associates while as the Co-Chair of the Employment Rights Department at Berger Montague PC, and has continued in her role as partner at Lichten & Liss-Riordan since January 2021. ECF Doc. No. 17 ¶ 28. Ryan Hancock, Esquire of Willig, Williams & Davidson and Michaela Wallin, Esquire and Alexandra Piazza, Esquire of Berger Montague, and Krysten Connon, Esquire (while at Berger Montague PC, but now at Lichten & Liss-Riordan) also represented the delivery associates in this matter. ECF Doc. No. 17 ¶¶ 15, 30, 77.

[14] ECF Doc. No. 10-1 at 5–6.

[15] *Id.* at 6.

[16] *Id.*

[17] ECF Doc. No. 17 ¶ 39.

[18] ECF Doc. No. 10-4 ¶ 29.

[19] ECF Doc. No. 17 at 34.

[20] *Id.*

[21] *Id.* at 35.

[22] ECF Doc. No. 10-3 at 14–15.

[23] ECF Doc. No. 10-3 at 14–15. Delivery Associates Starnes and Skinner signed the collective action settlement agreement on December 16, 2022. *Id.* Delivery Associate Alley signed the agreement on January 4, 2022. Counsel for the Delivery Associates all signed the agreement by January 5, 2023. *Id.* The Amazon entities signed the agreement on January 10, 2023, while their counsel signed it about a month before on December 16, 2022. *Id.*

[24] ECF Doc. No. 1.

[25] ECF Doc. No. 10-1 at 6–7.

[26] ECF Doc. No. 6.

---

[27] ECF Doc. No. 10. Amazon did not file a dispositive motion or Answer.

[28] ECF Doc. No. 25 at 18.

[29] ECF Doc. No. 10-3 ¶ 1.

[30] *Id.* ¶ 11(w).

[31] ECF Doc. No. 10-1 at 7.

[32] ECF Doc. No. 10-3 ¶ 11(j), (l).

[33] *Id.* ¶ 20.

[34] *Id.* ¶¶ 11(r), 12. The parties further agreed: "The Released Claims shall be released upon the signing, cashing, or depositing of a Settlement Award check. Defendants agree that this Settlement Agreement may not be used to assert collateral estoppel, *res judicata*, waiver or any other claim preclusion of FLSA claims with respect to individuals who did not specifically release those FLSA claims; however, Defendants do not waive the right to assert other defenses to those claims including, but not limited to, timeliness, scope and/or applicability of exemptions." *Id.* ¶ 11(r).

[35] *Id.* ¶ 13.

[36] *Id.* ¶ 30.

[37] *Id.* ¶ 30. The parties also agreed: "If the Settlement is not approved as resubmitted or if the Parties are not able to reach another agreement, then any Party may void this Agreement; at that point, the Parties agree each shall return to their respective positions as existed on the day before this Agreement was executed and this Agreement shall not be used in evidence or argument in any other aspect in the Action." *Id.*

[38] ECF Doc. No. 10.

[39] *Alvarez v. BI Inc.*, No. 16-2705, 2020 WL 1694294, at *3 (E.D. Pa. Apr. 6, 2020) (citing *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (quoting *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

[40] *Carney v. Travelers Aid Soc'y of Philadelphia*, No. 19-3599, 2020 WL 703684, at *2 (E.D. Pa. Feb. 11, 2020) (internal citations omitted).

[41] *Weirbach v. Cellular Connection, LLC*, No. 19-05310, 2020 WL 6581498, at *3 (E.D. Pa. Nov. 10, 2020).

[42] ECF Doc. No. 10 ¶ 2; ECF Doc. No. 10-1 at 6–7; ECF Doc. No. 10-3 ¶ 9.

[43] *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 18-01007, 2019 WL 5394751, at *2 (W.D. Pa. Oct. 22, 2019).

[44] *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016) (internal citations omitted).

[45] *Kapolka*, 2019 WL 5394751, at *2 (quoting *Deitz v. Budget Renovations & Roofing, Inc.*, No. 12-0718, 2013 WL 2338496, at *3 (M.D. Pa. May 29, 2013)).

[46] *Ogunlana v. Atl. Diagnostic Lab'ys LLC*, No. 19-1545, 2020 WL 1531846, at *3 (E.D. Pa. Mar. 31, 2020) (quoting *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 763 (E.D. Pa. 2016)).

[47] ECF Doc. No. 10-1 at 13.

[48] *Kraus*, 155 F. Supp. 3d at 530.

[49] *Kapolka*, 2019 WL 5394751, at *3.

[50] *Id.* (internal citations omitted); *see also Alvarez*, 2020 WL 1694294, at *5.

[51] ECF Doc. No. 10-4 ¶¶ 4–25.

[52] *Weirbach*, 2020 WL 6581498, at *4.

[53] *Id.* (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

[54] *Id.*

[55] *Kapolka*, 2019 WL 5394751, at *3.

[56] *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018) (quoting *Girsh*, 521 F.2d at 157).

[57] *Weirbach*, 2020 WL 6581498, at *4 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998)).

[58] ECF Doc. No. 10-4 ¶¶ 29–31, 39.

[59] *Id.* ¶ 39.

[60] *Id.* ¶ 40.

[61] *Id.* ¶ 41.

[62] 29 U.S.C. § 216(b).

[63] *Kapolka*, 2019 WL 5394751, at *7 (quoting *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013)); *see also In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014) ("In FLSA cases, judicial approval of attorneys' fees is necessary to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.") (internal quotation marks omitted).

[64] *Stewart v. First Transit, Inc.*, No. 18-3768, 2019 WL 13043049, at *2 (E.D. Pa. Dec. 30, 2019).

---

[65] *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (internal citations omitted).

[66] *Stewart*, 2019 WL 13043049, at *2.

[67] *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001).

[68] *Fein v. Ditech Fin., LLC*, No. 16-00660, 2017 WL 4284116, at *12 (E.D. Pa. Sept. 27, 2017).

[69] *Dominguez v. Galaxy Recycling Inc.*, No. 12-7521, 2017 WL 2495406, at *8 (D.N.J. June 9, 2017) (quoting *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 736).

[70] *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 WL 1344745, at *19 (D.N.J. Apr. 8, 2011) (citing *In re Cendant Corp.*, 243 F.3d at 736).

[71] *Id.*

[72] *Id.*

[73] *Stewart*, 2019 WL 13043049, at *2.

[74] *Id.*

[75] ECF Doc. No. 10-4 ¶¶ 4–25.

[76] ECF Doc. No. 10-1 at 5–6.

[77] ECF Doc. No. 17 at 39.

[78] *Id.* ¶ 29.

[79] *Stewart*, 2019 WL 13043049, at *2; ECF Doc. No. 10-4 ¶ 33.

[80] *Mabry v. Hildebrandt*, No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) ("In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%.") (citing *Rouse v. Comcast Corp.*, No. 14-1115, 2015 WL 1725721, at *12 (E.D. Pa. Apr. 15, 2015) (allowing percentage-of-recovery for attorney's fees at roughly 35%)); *Lyons v. Gerhard's Inc.,* No. 14-06693, 2015 WL 4378514, at *1 (E.D. Pa. July 16, 2015) (same, 44%); *Leap v. Yoshida*, No. 14-3650, 2015 WL 619908, at *4 (E.D. Pa. Feb. 12, 2015) (same, 33%); *Keller v. TD Bank, N.A.*, No. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014) (same, 20%); *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *4 (E.D. Pa. June 4, 2014) (same, 32.7%); *In re Chickie's & Pete's*, 2014 WL 911718, at *4 (same, 28%); *Young v. Tri County Sec. Agency, Inc.*, No. 13-5971, 2014 WL 1806881, at *8 (E.D. Pa. May 7, 2014) (same, 24.8%); *Dino v. Pennsylvania*, No. 08-01493, 2013 WL 6504749, at *3 n. 1 (E.D. Pa. Dec. 11, 2013) (same, 31%); *Brumley*, 2012 WL 1019337, at *3 (same, 33.3%); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 313–14 (E.D. Pa. 2012) (same, 33%); *Bredbenner*, 2011 WL 1344745, at *22 (same, 32.6%); *Williams v. Aramark Sports, LLC*, Nos. 10-1044, 10-1547, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) (same, 33%)).

[81] *Alvarez*, 2020 WL 1694294, at *8 (quoting *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006)).

[82] *Id.* (quoting *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)).

[83] *Id.* (citing *In re AT&T*, 455 F.3d at 164).

[84] *Weirbach*, 2020 WL 6581498, at *7 (quoting *In re Prudential*, 148 F.3d at 341).

[85] *Alvarez*, 2020 WL 1694294, at *8 (quoting *Altnor*, 197 F. Supp. 3d at 767).

[86] *Kapolka*, 2019 WL 5394751, at *12.

[87] *Id.* at *8.

[88] *Id.* at *10.

[89] *Brown v. Progressions Behav. Health Servs., Inc.*, No. 16-6054, 2017 WL 2986300, at *5 (E.D. Pa. July 13, 2017).

[90] *Id.* at *7.

[91] *Id.*

[92] *Arp v. Hohla & Wyss Enterprises, LLC*, No. 18-119, 2020 WL 6498956, at *1 (S.D. Ohio Nov. 5, 2020).

[93] *Id.*

[94] *Id.* at *5.

[95] *Id.* at *7.

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] ECF Doc. No. 17 ¶ 48.

[100] *Id.*

[101] *Id.* ¶ 49.

[102] *Id.*

[103] ECF Doc. No. 17 ¶¶ 43, 50 (Attorney Schalman-Bergen estimates her firm will spend another forty-five hours bringing the matter to a close); ECF Doc. No. 18 ¶ 24 (Attorney Hancock estimates

his firm will spend an additional 12.5 hours bringing this matter to a close); ECF Doc. No. 19 ¶ 25 (Attorney Wallin "conservatively estimate[s] her firm will spend 35 more hours bringing this matter to a close").

[104] *Kapolka*, 2019 WL 5394751, at *11 (considering counsel's estimate his firm would spend about twenty more hours "overseeing the distribution of funds, answering class member questions, and closing this matter").

[105] ECF Doc. No. 17 ¶ 29.

[106] *Arp*, 2020 WL 6498956, at *7.

[107] *Hickman v. TL Transportation, LLC*, No. 17-01038, 2020 WL 4581732, at *1 (E.D. Pa. Feb. 18, 2020).

[108] *Id.*

[109] ECF Doc. No. 17 ¶ 39; *see also Green v. Amazon.com*, No. 18-1032, ECF Doc. No.  38, (M.D.N.C. Oct. 26, 2020) (approving an FLSA settlement agreement for delivery associates who were paid by Valdivia to deliver packages on behalf of Amazon); *Gaines v. Amazon.com*, No. 19-528, ECF Doc. No. 72 (N.D. Ga. Jun. 22, 2020) (approving FLSA collective action settlement on behalf of delivery associate who were paid by On the Go Express, LLC, to deliver packages to Amazon customers); *Johnson v. Trinity Couriers, Inc.*, No. 19-686, ECF Doc. No. 50 (S.D. Ohio Nov. 16, 2022) (approving an FLSA class and collective action settlement on behalf of delivery associates who were paid by Trinity Couriers to deliver packages for Amazon customers); *Gongaware v. Amazon.com, LLC*, No. 18-8358, ECF Doc. No. 100 (N.D. Ill. May 24, 2021) (approving FLSA class and collective action for delivery associates paid by Sheard-Loman Transport, LLC to deliver packages to Amazon's customers and granting request for attorneys' fees in amount of $183,333.33); *Southern Star Express, LLC v. Page*, No. 19-1423, ECF Doc. No. 43 (W.D. Tx. March 31, 2021) (approving FLSA collective action settlement on behalf of delivery associates paid by Southern Star to deliver packages to Amazon customers and granting request for one-third of the gross settlement amount).

[110] 29 U.S.C. § 216(b).

[111] ECF Doc. No. 10-1 at 22.

[112] ECF Doc. No. 10-4 ¶¶ 47–49.

[113] ECF Doc. No. 10-1 at 22.

[114] *Id.*

[115] *Weirbach*, 2020 WL 6581498, at *5 (internal citations omitted).

[116] *Id.* (internal citations omitted).

[117] *Id.*

[118] *Id.*

[119] *Caddick v. Tasty Baking Company*, No. 19-02106, 2021 WL 4989587, at *10 (E.D. Pa. Oct. 27, 2021).

[120] *Id.*

[121] *Id.*

[122] *Alvarez*, 2020 WL 1694294, at *6–7.

[123] *Id.*

[124] *Id.* at *7.

[125] *Id.*

[126] *Id.* (citing *Tavares v. S-L Distrib. Co., Inc.*, No. 13-1313, 2016 WL 1743268, at *9 (M.D. Pa. May 2, 2016) ($15,000 service award each to both named plaintiffs*); Badia v. HomeDeliveryLink, Inc.*, Nos. 12-6920, 12-07097, 2015 WL 5666077, at *9 (D.N.J. Sept. 25, 2015) (service awards of $15,000 each to six named plaintiffs); *Creed v. Benco Dental Supply, Co*., No. 12-01571, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) ($15,000 service award to named plaintiff); *Foster v. Kraft Foods Grp. Inc*., Nos. 09-00453, 12-00205, 2013 WL 440992, at *2 (W.D. Pa. Jan. 15, 2013) (approved service awards of $15,000); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06–3202, 2009 WL 2137224, at *12 (E.D. Pa. July 16, 2009) ($20,000 to each of the three named plaintiffs); *Godshall v. Franklin Mint Co*., No. 01-6539, 2004 WL 2745890, *4 (E.D. Pa. Dec. 1, 2004) ($20,000 incentive approved each to two named plaintiffs)).

[127] ECF Doc. No. 10-4 ¶¶ 43–46; see ECF Doc. No. 10-3 ¶ 21 ("Subject to the Court's Approval Order, the three Named Plaintiffs shall receive a Service Award of $10,000.00 each for their efforts in bringing and prosecuting this matter **and** their broader release of claims in favor of Defendants.") (emphasis added).

[128] ECF Doc. No. 20 ¶¶ 23–25; ECF Doc. No. 21 ¶¶ 27–29; ECF Doc. No. 22 ¶¶ 24–25.

[129] ECF Doc. No. 20 ¶¶ 7–17; ECF Doc. No. 21 ¶¶ 7–21; ECF Doc. No. 22 ¶¶ 8–19.

[130] *Martinez v. IFA Grp., Inc*., No. 19-02247, 2019 WL 6133860, at *2 (E.D. Pa. Nov. 19, 2019).

[131] *Alvarez*, 2020 WL 1694294, at *8 (quoting *Brumley*, 2012 WL 1019337, at *2).

[132] *McGee v. Ann's Choice, Inc*., No. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014) (internal citations omitted).

[133] *Alvarez*, 2020 WL 1694294, at *8–9.

[134] ECF Doc. No. 10-3 ¶ 30 (emphasis added).

[135] *Alvarez*, 2020 WL 1694294, at *9 (internal citations omitted).

[136] *Martinez*, 2019 WL 6133860, at *2 (internal citations omitted).

[137] ECF Doc. No. 10-3 ¶¶ 11(r), 12.

[138] *Id.* ¶ 13 (emphasis added).

[139] *Alvarez*, 2020 WL 1694294, at *12.

[140] *Id.*

[141] *Id.*

[142] *Id.*

[143] *Id.*

[144] ECF Doc. No. 20 ¶¶ 18–19; ECF Doc. No. 21 ¶¶ 22–23; ECF Doc. No. 22 ¶¶ 20–23.

[145] *Alvarez*, 2020 WL 1694294, at *12.